Good morning. My name is Bill Graham. I represent Glacier Northwest. There's three issues raised in the appeal to this court. I'm going to concentrate on two of them today. They were the issues that involved matters seeking a new trial. The first one is an exclusion of evidence issue, and it's our position that the court excluded key evidence which went directly to the employer's motivation for Mr. Head's discharge, which is what's the central part of the case here. The evidence was excluded because it didn't exist at the time the decision was made. And there was certainly a lot of evidence that came in suggesting the seriousness of this kind of injury to equipment. So both on a prejudice level and also on an error level, what's the problem? Well, let me give you an idea of what was in front of the jury, and I think you may look at it with a more critical eye. The Glacier was allowed to have witnesses testify as to what they saw that day and what they saw in photographs taken that day, and that their belief that there was substantial damage to the loader by Mr. Head. But they weren't allowed to present evidence which would have confirmed that that belief was honest or genuine or strong, which goes to the key part of this matter. A plaintiff argued at trial that the damage was minor and that, in fact, the evidence on that was a error. This is what went into the jury box. This was the repair order of some minor repairs that were done the day of the accident and the day of the termination. If you look at the receipt, essentially this is a $500 bill for an oil and filter change. The mechanic came in and cleaned it out, changed the oil and filter, and put in $500 of oil and some time on this. So the jury goes back in the juror box, and they've heard the employer say, this was serious damages. We think, you know, the way this thing looked on that day, this loader was very badly damaged, a half-million dollar loader. But when they look at what the actual evidence, damage of actual damages is, this is all they have. This is what we know. that this was temporary and that this was the short-run issue and that this kind of damage was long-term and that there were some numbers in the record as to what the likely cost was, all of which would have been something that would have been known at the time. But the exact cost of repairing this truck wouldn't have been known at the time. Well, the management witnesses weren't allowed to estimate as to what the damages were afterward. They were able to say they thought the damages were substantial based upon how high the water was. And to explain this disorder as being simply a stopgap. Yes. They were testified. But then when the jury doesn't hear that, in fact, it did actually suffer substantial damages, that opens the door for a mixed-motive case. Glacier's position was there was only one motive here, and that was this man engaged in equipment abuse that resulted in substantial damage of the loader. But they weren't able to present in front of the jury that they were correct on that and that this actually was a substantial damage case. Had they been allowed to put in the fact that a half-million dollar loader was told by this man, that's what happened. That's what our evidence would have been, that the loader actually was shelled and not used again because of what happened. But they weren't allowed to testify without the testimony, without the document? Didn't the management people essentially testify to that? No. They were precluded. That was the exclusion. They were not allowed to testify about the disposition of the loader. I understand that. But they were able to testify that given their experience looking at this machine, that it was in extremely bad shape and that it would cost a lot of money to fix. They were allowed to testify they believed there were substantial damages. And to give estimates about how much? But then we go to the jury box and say, well, where's the evidence that that's true? We weren't allowed to put in evidence. And the plaintiff was allowed to put in evidence that that's maybe not true. The problem seems to be that the evidence that this piece of equipment was totaled didn't exist at the time that the plaintiff was fired. It wasn't totaled on that day, but the damage had already occurred. The verification of the extent of damage came later. Right. So what existed at the time was their assessment of the degree of damage and that they were allowed to testify to. But without the jury being told that that's truthful, and this is very similar to what happened in the Busbee case, Busbee v. City of Orlando, 11th Circuit case, where a plaintiff was able to put in evidence that a post-termination report on what her statements were and what her allegations were about her manager were true, came in. Now, that report didn't exist. But did the plaintiff's lawyer argue in closing argument that it was trivial damage? I'm sorry. Did the plaintiff's lawyer argue in closing argument that this was trivial damage? Yes. They argued that this was minimal damage and this is nothing what other people who had been there. Well, they argued the second, but that they argued that it was minimal damage. They argued that the other people in similar circumstances had not been fired, but that they argued that it was minimal damage. Yes. And management, Glacier, was not allowed to cross-examine those individuals about, well, did what you do result in totaling a loader and it being shelved and not used again because we couldn't use the disposition evidence. So it limited cross-examination of those witnesses as well as presenting verification of her motive evidence. Wasn't there also testimony of photographs of the loader? There was also testimony from the mechanic who had to testify about the problems with the brakes, the gears, and the extent of the damage. Wasn't that presented to the jury? Yes. He testified that based upon what he was looking at, he believed there was substantial damage based upon these photographs. And he testified to that to the jury. Yes. But we weren't allowed to say that that was truthful testimony because look what happened to the loader. Had that happened, this could have turned into a single motive case and the jury could have found for my client. Instead, the only actual damages was the order that I just handed up and a blank slate that, well, nobody testified as to what really happened to the loader, so I'm going to, that allows them to infer something else. The actual damage, the certification that was totaled, would have bolstered the credibility of both Tongass and Miller, or Mueller rather, in testifying. And that's where it really goes to because they said there was substantial damage and here's the proof that they were right, right, that they have credibility. After the credibility of Tongass and Mueller was put into question, did you re-offer the evidence that this was totaled? On the grounds that the plaintiff had reopened the credibility of Tongass and Miller? No, I believe we were precluded, Your Honor. You didn't re-offer so you didn't get a new ruling. You just stuck by the old ruling. Yes. The other issue concerns what we call the decision-maker doctrine, and that's a legal doctrine in a discrimination case where the plaintiff has the burden to show that the person who makes a discriminatory decision, in this case termination, was either biased because of that person's protected class status or activity, or because they were presented biased information from a lower-level supervisor that did have a discriminatory intent. The evidence in trial was that General Manager Eric Mueller made the decision to terminate Mr. Head. Are you aware of the Pollin v. Churchhoff case at this court from July of 2007? I don't think I saw that one, Your Honor. Which says that if a subordinate sets in motion proceeding by an independent decision-maker that leads to an adverse employment action, the subordinate's bias is imputed to the employer if the plaintiff can prove that the allegedly independent adverse employment decision was not actually independent because the biased subordinate influenced or was involved in the decision or decision-making process. I don't think that would apply here, Your Honor, because the facts are Mr. Mueller personally observed Mr. Head in the submerged loader. And he directed Mr. Head. But the actual sequence of events seems to have been, at least there was testimony from Mr. Jury could conclude, that it was the supervisor who made the decision and fired him. No, I disagree, Your Honor. Did he say he fired him? Does nobody say? He relayed the termination decision to him. Testimony was Mr. Mueller made the decision. Mr. Mueller conferred with the H.R. Department, received the information from Mr. Tougas that Mr. Head had not been directed to go into the mud hole. And then he told Mr. Tougas to fire him. But wasn't there evidence that Mr. Head was told, was actually told by Mr. Tougas before that, that he was being terminated, before Mueller even was involved? I think in a footnote to Mr. Head's response brief, they make that argument. That doesn't sit, that's a contortion of what the facts were here. I don't think that's factually supportable. The only information that Mr. Mueller needed after he observed the sunken loader was, was this operator given a direction or assignment to go into the mud hole? If the answer to that question is no, then it was a slam dunk for Mueller. That was equipment abuse. There was substantial damage to the loader, and this man was responsible. If, however, Mr. Head had been directed to go in there, then it wasn't equipment abuse. He was simply doing what his supervisor had told him. And that was the fact that was reported to Mr. Mueller. Mr. Head admitted to trial. That was true. He went in there on his own. That's all Mueller needed, and Mueller made the decision. So there was no taint here by anything Mr. Tougas did, because the information that went to Mr. Mueller was untainted. And there was no evidence that Mr. Mueller had any discriminatory intent whatsoever. And that's why a new trial is required in this case. Didn't Mr. Tougas testify that he was the individual who actually terminated Mr. Head? And didn't he also testify, was he asked, did you and Mr. Mueller decide to terminate him, and he said yes? Yes, but that was one thing he said. He said at trial Mr. Mueller made the decision and told him. He did talk to Mr. Mueller about that. Mueller directed him to terminate Mr. Head. That's what the trial testimony was. But at trial also they received interrogatories that didn't, the interrogatories, the response indicated that they were fired by both individuals? Yes, on an interrogatory they were both identified as individuals involved. They both fired them? Yes, but when the actual evidence that was supplied in the testimony by Mr. Mueller and Mr. Tougas and Tom Fritz, who was the HR manager at that time, was that Mr. Mueller directed that he find out whether or not this man had been directed to go into the mud hole. He conferred with Human Resources and made the decision once he found out there was no assignment or direction to go into the mud hole. And then he called Tougas back and said terminate him, and that's what happened. Okay, so your time is up, and thank you very much for your argument. Thank you. Excuse me. May it please the Court, Scott Hunt appearing on behalf of Plaintiff Matthew Head. It's important to realize that all three issues in this appeal are reviewed for an abuse of discretion standard. And as to each of the three issues, the district court judge was. I'm sorry? The contention that there wasn't sufficient evidence with regard to who was the decision-maker is not. A couple problems with that, more than a couple. First of all. It's not reviewed for abuse of discretion, is all I'm trying to say. It's an exclusion of evidence is an abuse. But that's not an exclusion of evidence question. Start with the exclusion of evidence. What I was saying was that the question of whether Mr. Mueller was the decision-maker is not reviewed for abuse of discretion. No, agreed. It's a sufficiency of the evidence question. Right. But that goes to the new trial issue, which is an abuse of discretion review. As to the exclusion of evidence, we'll start with that one. Was there, in fact, an argument in closing argument that there was no, that this was trivial? There is no mention in opening or closing argument, I have read both twice, of any reference to the repair order you were given. Just now, to minimum damage, to the extent of damage, to the cost of damage, there is simply no reference as to damage and the degree of damage in my opening or closing. Defendant doesn't cite that's in the transcript. Defendant doesn't cite to the transcript because it doesn't exist. Simply not an issue. Never raised. My questioning about that exhibit takes up ten lines, and it simply established what the meaning of the exhibit was. Defendant put on ample testimony that it wasn't the long-term damage and went into explicit, detailed description as to how the damage was caused, what it took to repair the damage, the cost of those damage repairs in thousands of dollars, up to $60,000. But there's a more important issue. Then why was the evidence that the loader was totaled kept out? Because it was cumulative? Accumulative and irrelevant because it didn't exist at the time. But there was both a 402 and a 403 objection. But it went to the credibility of Tungus and Mueller as to their perception of the extent of the damage done to the loader as the motivating reason why Head was fired. But it wasn't a motivating factor and a reason. If the court looks to S.E.R. 219, there's testimony from Mr. Mueller. I asked him, was damage to the vehicle an issue in the decision to terminate Mr. Head? Answer, no. They make a big point as to who the decision-maker was. The decision-maker, according to their story, I'll address the fact that they both were decision-makers. The decision-maker identified by defendant at S.E.R. 219 says damage was not an issue in the termination. The policy that throughout trial was the issue as to whether the equipment abuse policy was violated does not require damage. The policy is violated if it's operated, if the equipment is operated in a manner that may or is likely to cause damage. Mr. Tungus at S.E.R. 120 said that damage was not necessary to violate the policy. Mr. Mueller testified as to the reason Mr. Head was terminated. His quote, he got a Caterpillar 988B loader stuck in the mud. Was there any other reason? No, at S.E.R. 210. So they're creating two issues on appeal that did not exist at trial. There was no argument that the damage was minor because the testimony was it doesn't require damage to be violated, for the policy to be violated. Mr. Mueller himself testifies damage isn't an issue, and I never raised the issue of the degree of damage in opening or closing. Now, as to the issue as to the decision-makers, we did have an interrogatory as evidence. The interrogatory identified both Mr. Tungus and Mr. Mueller as the decision-makers. That is confirmed in the deposition test, I'm sorry, in the trial testimony. It's confirmed that they both, that that is accurate, the interrogatory is accurate, that they were both decision-makers. And as we point out in our, in the footnote in our brief, and is supported by the case law you brought to defendant's counsel's attention, the fact it is undisputed that Mr. Tungus recommended the termination. That is undisputed. He has tainted the decision, even if the evidence we presented that Mr. Tungus terminated Mr. Head before the conversation with Mr. Mueller were disregarded. But that is evidence in the record. It is established in the record that Mr. Mueller told, I'm sorry, that Mr. Tungus told Mr. Mueller about the fact that Mr. Head didn't have a reason to be where he was clearing out the drain. The problem is that Tungus was biased. I'm sorry? What is the evidence that Tungus was biased? That's the evidence that runs throughout the entire trial, Your Honor, starting with his acceptance of the fact that Mr. Head could take time off before he had his bipolar condition, but couldn't move to day shift. His being hassled about returning to work after he had been diagnosed with depression. The fact that Mr. Tungus hassled him with various unnecessary medical releases before returning him to work. The fact that once he got all the proper medical evidence assembled, Mr. Tungus waited another week to return him to work, despite testifying he was shorthanded. The evidence in an e-mail that was exhibited at the trial, stating that if Mr. Head needed to work strictly days, I've advised him he ought to entertain the idea of looking for other work. That animus to the requested accommodation of a day shift is repeated, not just in the e-mail to Mr. Mueller, but is repeated as a threat to Mr. Head twice before he's allowed to return to work. When Mr. Head returns to work, there's a pattern of mistreatment by Mr. Tungus, starting with putting him in the least desirable job, creating an issue regarding overtime, followed by an issue regarding swing shift, et cetera, et cetera, et cetera. Ample testimony regarding Mr. Tungus' bias for the district court to conclude that there was sufficient evidence to deny the new trial. If the court doesn't have any other questions. Thank you very much. Thank you. I'm sorry. Why don't we give you a minute and rebuttal. One minute? Yes. Mr. Mueller, two minutes. All right. Thank you. On the issue of the damages, volume 3, page 145 of the trial transcript is Mr. Mueller's testimony. I'd refer the panel to that because he was asked about what was going through his mind at the time. He was asked, when you first came upon the scene of the loader submerged in the mud water, was your initial impression that this was likely equipment abuse? He says, I know it was pretty serious. I was pretty upset. He said the water was over the axles. It was up past the halfway point on the axle. When you get above the halfway point of the axle, that's when water, mud, dirt, grit breaches into the brakes, breaches into the differentials. You're basically tearing up the gears. In other words, he is concerned about the damage. Mr. Hunt's picked out one sentence to say this is all Mr. Mueller said, but there's a full flavor that this was a concern of the company. And the inability of us to rebut the inference that was left with the jury that the motivation was false, that there were other motivations because we couldn't tell them what actually happened to the loader, was very significant. Thank you, Your Honor. Thank you very much, counsel. The case of Head v. Glacier Northwest is submitted. We will now go to Green v. Pembroke.
judges: Berzon, Bea, Gutierrez